[No. 1,705.]

JACOB A. MORENHOUT, THOMAS B. VALEN-
TINE, AND BENJAMIN S. BROOKS *v.* WILLIAM
E. BARRON.

CONTRACT TO SELL LAND.—A provision in a contract for the sale of land
that the purchaser may make inquiry and satisfy himself with its quality,
situation, and title, and, if not satisfied, may rescind the contract, is solely
for the purchaser's protection, which he may waive; and a conveyance
taken by him, without such inquiry, is valid and effective.

EXECUTION OF DEED IN PURSUANCE OF CONTRACT TO SELL LAND.—
Where the owner of a Mexican grant, in California, in 1847, contracted
to sell it for a certain price, if the purchaser should, after inquiry, be satis-
fied with the title, and pay the price, and after more than half the price was
advanced, the vendor executed and the purchaser received a deed, in the
Mexican form, in which the contract was set forth as a part thereof: *held*,
that by the execution of the deed, all the purposes of the contract were
accomplished, and that the provision that it should be attached to the deed
amounted to no more than a recital, and did not have the effect of keeping
it on foot as a subsisting contract.

FINDINGS OUTSIDE OF THE ISSUES USELESS.—A finding is useless and idle
unless the facts found are within the issues, and a judgment based upon
such finding cannot be sustained.

APPEAL from the District Court of the Fourth Judicial
District, City and County of San Francisco.

This was an action brought for the purpose of having a
certain tract of eight leagues of land, called the Rancho
" Caslamayomi," in Lake County, adjudged to be held by
the defendant in trust for the plaintiffs, to compel a convey-
ance thereof to them, and to enjoin defendant from setting
up any title thereto adverse to the plaintiffs.

It appears that on August 23d, 1847, one Eugenio Mon-
tenegro, being the owner by grant from the Mexican Gov-
ernment of the rancho named, entered into an agreement,
in writing, with William Forbes, of the house of Barron,
Forbes & Co., of Tepic, Mexico, as follows:

" By this document it appears that I, Eugenio Montenegro,
being the owner in property of a tract of land, situated in

Sonoma, Alta California, the extent of which is eight square leagues, suitable for sowing and grazing purposes; which tract of land I have proposed to sell to Don Guillermo Forbes, of this place, for the sum of two thousand dollars; which purchaser, being satisfied with the price, is desirous of ascertaining the quality and situation of the land referred to; for which purpose he will appoint a confidential agent to make the necessary examination, and report in relation thereto, as well in respect to the character of the lands as in relation to the title under which the same has been guaranteed to me; and if said examination shall result in his determination to consummate the proposed purchase, from the present time I obligate myself, in the most solemn manner, to transfer to the said Señor Forbes the eight square leagues of land referred to, for the said sum of two thousand dollars, under the condition that he, in the meantime, supply me with partial sums, from one to five hundred dollars, on account of the value of said land, with the understanding that if the sale should not be consummated, I shall return to the purchaser the amount he may have advanced me under the foregoing condition, as soon as the business may be determined; and, as a security for the return of what I may receive, the Señor Don José Castro binds himself to do it in my name, in case I should fail to do so, assuming my obligation, and, for the purpose, obligating the property of which he is now possessed, as well as that which he may hereafter acquire; who, with me and the Señor Forbes, signs this, in witness of the same, in Tepic, on the 23d of August, 1847."

In pursuance of this agreement, Forbes paid to Montenegro several sums, amounting to one thousand five hundred and fifty-two dollars and fifty cents; and on August 7th, 1848, at the same Town of Tepic, in Mexico, Mentenegro executed and delivered to Forbes a deed of conveyance [escritura], according to the Mexican formula, as follows:

"In the City of Tepic, on the 7th day of August, 1848, before me, the Notary, and witnesses, the Señor Don Eugenio Montenegro, a resident of this place, whom I certify that I know, said: That in Alta California he owns a tract of land, called 'Caslamayomi,' which he has contracted to sell to Don Guillermo Forbes, of this place, according to a private obligation which he executed on the 23d day of August, 1847; that upon said contract the said Forbes has already paid, on account, the sum of one thousand dollars, which he received in two payments, and receipted for the same, as appears at the end of said obligation; and finally, as it has been determined to sell and he has received from the said Forbes another sum of a thousand dollars, in completion of the sale stipulated, wherefore acknowledging the receipt of the two thousand dollars mentioned in the contract, he renounces all exceptions which might be taken, and that of not having referred to the Law 9, Tit. 1, Part 5, which treats thereof, and the two years allowed for proof of the receipt of the same. In consequence whereof, and in due form of law, he declares that for himself, and in the name of his heirs and successors, or whomsoever of them, who may have any right, title, or interest in the matter, he sells forever, with the right of inheritance, to the said Don Guillermo Forbes, the said land or rancho situated on the frontier of Alta California [describing it]. That Señor Forbes is satisfied with the titles under which the vendor holds said land, and for this reason said titles are not presented. That said land is free from all incumbrances, express or implied, by mortgage, sale, or otherwise; and in this condition it is sold, with right of entrance and exit, with its depths and heights, and with all the uses, privileges, and servitudes, that he has had or could have, by law, in and to said land, for the sum of two thousand dollars; that

this sum is the value of said land, and that, although it should be worth more, of the excess, whatever the same may be, he makes a donation thereof to the purchaser and his representatives, by judicial intervention and other securities, renouncing Law 2, Tit. 1, Book 10, of the New Recop., and the four years provided for asking a rescission of the contract or a supplement to its just price, which are considered as having passed, as if in fact they had; wherefore he relinquishes all right that he may have had or could have, to the said land, since he cedes, renounces, and transfers to the purchaser and his representatives all his right in the same, real, mixed, direct, and executive, in order that he may possess the same as his own, cultivate, or make donation thereof at his will. He confers power on him, in his own cause, to take the real possession of said land, on the presentation of this writing alone, of which he consents legalized copies may be given to the purchaser, which shall serve him as a title and security for his property. And for the bona fides of this sale, and for the security and firmness of this instrument, the vendor obligates his present property, and such as he may hereafter acquire, to be subject to the fulfillment thereof, as by judgment rendered by competent authority; renouncing his domicile, and the laws and privileges that may favor him, and the generalities of the law in form. Thus he executed and signed, consenting that the obligation referred to, for what it may import to the purchaser, be annexed to this writing, since he hereby admits that the same was executed in due form. Don Santos Gállego, Don Rosario Romero, and Don Dionisio Garcia y Corona, being the witnesses present.

                              " EUGENIO MONTENEGRO.

" Which I attest: JESUS VIJAR."

It further appears, that in 1849, Forbes, not having obtained possession of the land, and not being satisfied with the title, wrote to Montenegro as follows:

"TEPIC, July 31st, 1849.

"*Senor Don* EUGENIO MONTENEGRO:

"MY DEAR SIR: Your favor of the present month is before me, and to which I reply that I have actually sent instructions to Don Diego Aleje Forbes for the settlement of the matter pending. There is no doubt that for more than a year you have been in want of the remainder of your money; but you must not expect that I will advance this money for a property which I now see no probability whatever of obtaining, on account of the difficulties that have arisen; and as I am of opinion that these cannot be overcome, I avail myself of your offer to return me the sum received by you, which amounts to one thousand five hundred and fifty-two dollars and fifty cents, and our contract remains null, which you can do at once, placing that sum at the disposition of Señor Forbes, whom I will advise to the same effect.

"Trusting that you are in good health, I remain your obedient servant,

"GUILLERMO FORBES."

Various other letters were written, from which it appears that Forbes offered and desired to get back his money and give up his deed, but that neither the money was refunded or the deed given up.

In December, 1853, Montenegro, claiming that the letters of Forbes amounted to a rescission of the contract and deed, made another conveyance of the property to the plaintiff, Jacob A. Morenhout, who afterwards conveyed undivided interests therein to his co-plaintiffs, Valentine and Brooks.

In June, 1857, Forbes conveyed the land to the defendant, William E. Barron; but before the making of the last conveyance, the claim was presented by Forbes to the United States Land Commission. It appears to have been rejected

there, but was afterwards appealed to the United States District Court, where, chiefly through the exertions of Mr. Brooks, it was finally confirmed in the name of Forbes. It further appears, that after the making of the deed to Barron, the plaintiffs offered to pay him the sum of one thousand five hundred and fifty-two dollars and fifty cents, with interest, upon his executing to them a deed of the ranch, which he refused; and that neither party had been or were in possession of the property.

On substantially the foregoing state of facts, the Court below, on November 27th, 1867, found, among other things, that "though the deed of August 7th, 1848, was absolute on its face, there was, at the time of its execution and delivery, an understanding and agreement between Forbes and Montenegro, that if the former, upon examination, should find that he could not get possession of the land, or the title was not good, he should have the right to rescind the purchase and demand his money." The Court also found that Forbes had, "on July 31st, 1849, exercised his right to rescind the contract of purchase, and did rescind it, by sending to Montenegro the letter aforesaid, and other letters, by himself and his agent, to that effect," and that "Montenegro accepted said rescission, and agreed to repay said Forbes said sum due him." And as a conclusion of law, the Court found that plaintiffs were entitled to a conveyance of the property from the defendant, upon the payment to him of one thousand five hundred and fifty-two dollars and fifty cents, with interest thereon at the rate of ten per cent per annum, from March 4th, 1849, and that defendant should be enjoined from setting up any claim or title thereto, adverse to plaintiffs. In accordance with these findings, a decree was entered; and a motion for new trial having been overruled, defendant appealed from the judgment and order.

*Wilson & Crittenden,* for Appellant.

The findings are not only unsustained by the evidence, or by any particle of evidence, but are in direct conflict with the evidence, and entirely negatived and disproved by it. The main and material error into which the Court fell was that there ever was any understanding or agreement whatever in respect to any right of rescission on the part of Forbes, or any rescission consented to by Forbes. There is no room for doubt or misunderstanding about the meaning of this contract, or the intention and objects of the parties, in entering into it. Montenegro's object was to sell the land for the sum mentioned. Forbes' object was to buy it for that sum, if, after inquiry, he should be satisfied in respect to its quality and the title of the vendor. Neither party contemplated a loan or borrowing of money on the land itself. And afterwards Montenegro actually did sell the land, and executed his deed of it, in which he refers to the contract, and recites that it had been executed in due form.

After the execution of the deed, the contract out of which it grew had no longer any existence. It was then carried into execution, and the parties discharged from all further obligations upon it. The right on the part of Forbes to decline the purchase and demand his money was gone the moment he accepted the deed, and Castro, who had been security for its return, was then absolved from liability. Thenceforth Forbes was the absolute owner of the land.

The title to the land having thus been vested in Forbes, absolutely, how did he ever become converted into a trustee, holding it for the benefit of Montenegro? None of the letters and none of the testimony has any tendency to prove anything of the kind in the remotest degree. The letter of July 31st, 1849, upon which the finding of rescission pur-

ports to have been based, was evidently in answer to a proposition made by Montenegro to return the money and take back the land. Forbes by this letter simply expresses assent, and says: "Pay at once and our contract shall be null; pay to James Alexander Forbes. I will advise him to this effect."

*John Currey,* for Respondents.

In 1848, at the time of making the contract with Forbes, Montenegro was a Mexican soldier in actual service against the United States. He wanted money and he had no security to offer except an imperfect grant to land in a State at that time in the possession of the enemy, and the war actually going on. A mortgage on the property could not be foreclosed, and the contract itself would be void and could not be enforced in California. There remained no way but to give the transaction the character of a sale. They intended to give that character to it, and did, and the transaction is a bargain and sale, and the last instrument is an. *escritura deventa,* and vested in Forbes the title (*titulo*), but not the estate (*dominio.*)

If the act of sale had been absolute there would have been no object in the provision contained in the instrument itself, that the contract of sale should be annexed to the *testimonio.* "Consenting that the obligation referred to for what it may import to the purchaser, be annexed to this writing."

It is not proper to call the *escritura* a deed, because it differs essentially from our deed. Our deed conveys the estate; the Spanish *escritura* does not; no estate passes by the writing. We call our conveyance properly a deed, because it is not a contract, but an act *factum.* By its own force it transfers the estate. But under the Spanish law the estate passed by delivery of possession, as it did anciently under the common law by livery of seizin. Both laws were

originally the same; the common law has changed, the civil has not. There was no such thing as a deed in the civil or Spanish law. There was no law that required a conveyance to be in writing—a verbal sale of land, accompanied by delivery, passed the title *dominio*—a written contract would *not* pass the title without delivery of possession, nor would it pass the title without payment of the consideration money. (Alvarez, Derecho Real, Lib. 2, Part II, Sec. 3; Lib. 2, Tit. I, Part II, Sec. 7; Sala, Ilustracion del Derecho Real, Lib. 2, Tit. I, Sec. 20; Lib. 2, Tit. XVI; *Merle* v. *Matthews*, 26 Cal. 673.)

If the sale was complete, Montenegro would have insisted upon the payment of the price. It is admitted in the pleadings, and shown by the evidence, that the two thousand dollars were not paid; that a balance thereof remained unpaid. According to the Spanish law, the title did not pass until the price was paid. This law is as old as the Partidas, and is repeated in every code and text book down to the present day.

The letters and the parol evidence show that the transaction, though in form a sale, was not absolute. Forbes always speaks of the money given to Montenegro as an *advance*, and never as a *payment*. He sometimes calls it the *debt* of Montenegro to him.

Again: Whatever may have been the fact as to the continuance of the original contract or the purpose of the act of sale, there can be no doubt from the evidence that there was a contract between Montenegro and Forbes, by the terms of which Forbes had the right to rescind the contract and demand back his money. And it is plain that Forbes availed himself of his right to rescind, and did rescind, the contract. He said that he would not pay the balance; he demanded a return of his advances; and he annulled the contract. He said, "Our contract remains null;" in other

words, our trade is at an end. (See *Foster* v. *Nelson*, 2 Peters, 306; *United States* v. *Perchman*, 7 Peters, 86.)

The effect of the rescission of the contract by Forbes was to reverse the relation of the parties. Montenegro became the debtor to Forbes for the money advanced, and Forbes became creditor of Montenegro for the same, with a lien on the land for repayment. The relation which was thus created conferred the rights upon each other which pertained to that relation, and neither party could deprive the other of his rights without his consent.

After the cause had been argued and submitted, the Supreme Court directed a reargument upon the following questions:

First—Upon what particular ground of equity jurisdiction, does the complaint here rest?

Second—Was Forbes, in the first, and Morenhout in the second instance, a purchaser from Montenegro of a new (mere) equity?

Third—Supposing Barron to have subsequently obtained the legal title from the United States, as the confirmee of this equity, if it was one, what circumstances disclosed it inequitable for him to retain that title for himself?

Fourth—Supposing, however, that the parties dealt with the legal title in the first instance, and that Morenhout was a subsequent purchaser of that title, in good faith, for a valuable consideration, and without notice of the previous conveyance made to Forbes, is he entitled, upon that ground, to maintain this bill for equitable relief?

*B. S. Brooks*, for Respondents, on reargument, in answer to the first question, made citations from 2 Story's Eq. Jur. 976, 1,059; *Bagnell* v. *Broderick*, 13 Peters, 450; *Estrada* v. *Murphy*, 19 Cal. 272; *Garland* v. *Wynn*, 20 How. 8; *Townsend* v. *Greeley*, 5 Wallace, 335; *Salmon* v. *Symonds*, 30 Cal. 306; *Wilson* v. *Castro*, 31 Cal. 434; *O'Connell* v. *Dougherty*, 32 Cal. 459; *Bludworth* v. *Lake*, 33 Cal. 262.

In answer to the second question, counsel contended that the subject of sale by Montenegro was a Mexican concession under the colonization law, and should be considered as addressed to a Mexican tribunal; and that in a country where the distinction between legal and equitable titles are unknown, no answer could be given to it. He claimed that the right was a legal one, and cited *Fremont* v. *United States*, 17 How. 557; 13 Peters, 454; *Wilcox* v. *Jackson*, 13 Pet. 516; *Wilson* v. *Castro*, 31 Cal. 437.

In answer to the third question, counsel referred to the authorities cited, to the effect that whenever a party has obtained a confirmation of a title or concession which legally or equitably belongs to another, whether that confirmation is obtained innocently or wrongfully, in good faith or in bad faith, a Court of equity holds it to be inequitable for him to retain the title, and will decree him to convey it to the real owner.

In answer to the fourth question, counsel contended that Morenhout would unquestionably be the owner of the land, and that it would be his title which was confirmed; and he cited *Bludworth* v. *Lake*, 33 Cal. 263.

*Wilson & Crittenden*, for Appellant, on reargument.

The protection given by equity to a purchaser for a valuable consideration, without notice, is invoked in favor of a defendant. The title of such a purchaser has been said to be a shield to defend his own possession, not a sword to attack the possession of others. (*Patterson* v. *Slaughter*, Ambler, 292; *Strode* v. *Blackburn*, 3 Ves. Jr. 225; *Beekman* v. *Frost*, 18 Johns. 544; 1 Cow. 642; 2 Sugd. on Vendors, 572; 2 Leading Cases in Eq. 60; 10 Pet. 210.)

The complaint falls far short of the requirements of a plea setting up such a defense. Among other things, it

ignores entirely the deed of August 7th, 1848, executed in pursuance of the prior agreement, and, throughout, places Forbes, and Barron, his successor in interest, in the position of having no other interest in or claim to the land than such as might arise out of the agreement. Instead of stating the title of Barron as it was known to the plaintiffs when the action commenced—that is, instead of alleging that there had been, in 1847, an agreement between Montenegro and Forbes for the sale and purchase of the land, and a year afterwards that agreement had been carried into effect, and a deed made by Montenegro to Forbes; and, claiming under that deed, Forbes had presented the title and procured its confirmation to himself; and then, after setting up the defendants' title truly, proceeding to show the supposed better right of the plaintiffs, and explicitly denying notice of the title of Forbes and Barron, the complaint ignores the deed altogether, and sets up the old contract as still subsisting, and as the only source of right in the defendant. In short, it asserts for the defendant a title not claimed by him, and then proceeds to demolish it.

*B. S. Brooks*, for Respondents, in reply.

The bill was substantially a bill to redeem. We set forth in detail the history of the transaction; but the substance of the whole is, that the defendant holds a conveyance of the property as security for the repayment of a certain sum due from the late Eugenio Montenegro to defendant's assignor; and the plaintiffs, as assignees of Montenegro, have offered to pay that sum with interest, and all expenses, which the defendant declines to receive. We are ready and willing to pay, and ask that he may be compelled, on receipt of this money, to convey to us. We ask to redeem.

A decree was entered, and a motion for new trial having been overruled, defendant appealed from the judgment and order.

By the Court, RHODES, J.:

One of the questions which the Court proposed to counsel on the reargument was: Upon what particular ground of equity jurisdiction does the complaint rest? In view of the peculiar circumstances of the case, and of the numerous positions taken by the plaintiffs, it was very proper that they should state the ground, or, if they proceeded on more than one theory, the grounds on which they claimed relief. Instead of responding directly to the question, they have furnished us with long citations from the opinions in numerous cases in equity, in which questions similar to those discussed by counsel in this case were considered. They have in effect replied: The books furnish an answer to the question.

Whatever may have been the grounds upon which the plaintiffs claimed relief, it is apparent from the findings of fact and conclusions of law that the Court tried the cause, and rendered judgment for the plaintiffs, on the theory that the deed of Montenegro to Forbes, of August 7th, 1848, had been rescinded, and that thereafter Forbes, and, after the conveyance by Forbes to Barron, the latter, held the title (including whatever was acquired by means of the confirmation of the title) in trust for Morenhout and his co-plaintiffs. The case will be considered on that theory.

The grant to Montenegro, whatever may be its character as to being inchoate or imperfect, passed to him a legal title. That is the position of the plaintiffs, and it is not controverted by the defendant. (See *Fremont* v. *U. S.*, 17 How. 557; *Estrada* v. *Murphy*, 19 Cal. 270; *Wilson* v. *Castro*, 31 Cal. 437.) Indeed, that position is sustained by all the cases in which a recovery in ejectment on Mexican grants has been had.

The contract of August 23d, 1847, of Montenegro with Forbes, for the conveyance of the rancho to Forbes, it is not doubted was in all respects valid, and gave Forbes the

right to a conveyance, when he should become satisfied in respect to the quality, situation, and title of the rancho, and pay the remainder of the purchase money. He could, of course, waive the inquiry as to those matters, and take a conveyance of the rancho, if he so elected, without any investigation, or a complete investigation, as to the title, quality, or situation of the rancho, for that provision in the contract was intended solely for his protection.

The deed of 1848 was executed under and in pursuance of that contract. By the execution of the deed all the purposes of the contract were accomplished. It no longer remained as a subsisting contract. The provision in the deed, that the contract should be attached to the deed, did not have the effect to keep the contract on foot. It amounted to no more than would a recital that the deed was made in pursuance and in performance of the terms of the contract. It makes no difference what may have been the understanding of the parties at the time the deed was executed, as to the right of Forbes to make a further examination in respect to the title or situation of the rancho; for it is a matter of legal construction that, upon the execution of the deed, all the title that Montenegro then held passed to and vested absolutely in Forbes.

What has just been said develops a point which, in our opinion, is decisive of the appeal, on the theory on which it was tried by the Court below. The plaintiffs set up the contract of 1847, and allege that prior to Montenegro's return from Tepic to California, which was in 1848, it was agreed between him and Forbes that the latter should inquire into the condition of the title, etc., of the rancho, and if dissatisfied with the title, might rescind the sale; and that Forbes made inquiries as to the title, became dissatisfied therewith, and elected to rescind the sale. The precise date of the agreement mentioned in the complaint, giving Forbes the right to rescind, is not averred, and as no

facts are stated by which such agreement can be distinguished from that which is mentioned in the contract of 1847—that contract in effect giving Forbes the right to rescind, if dissatisfied with the title, quality, or situation of the rancho—the complaint will be construed as referring to the agreement contained in the contract. And the sale, which it is alleged Forbes had the right to rescind, is evidently the sale evidenced by the contract of 1847. This conclusion is strengthened by the admission of the plaintiffs, in one of their briefs, that they did not know of the deed of 1848 until after the commencement of the action. The Court finds the making of the contract of 1847, the execution and delivery of the deed of 1848; that there was an agreement contemporaneous with the execution of the deed by which Forbes had the right to rescind the sale; and that he exercised that right, and rescinded the sale. The finding, both as to the agreement reserving to Forbes the right to rescind the sale, and as to the rescission in fact, cannot be sustained for several reasons. The complaint does not aver the agreement reserving the right to rescind, which is found by the Court. Nor does the complaint aver that the sale, which is evidenced by the deed of 1848, was rescinded; but rather that which is mentioned in the contract of 1847, while the finding evidently has reference to the deed of 1848. A finding is useless and idle, unless the facts found are within the issues; and a judgment based upon such facts cannot be sustained. It is very apparent from the finding, and in some degree from the evidence, that the plaintiffs might, with propriety, have obtained leave to amend, so as to have made their attack upon the deed of 1848, instead of alleging that the contract of 1847 was rescinded—the latter after the execution of the deed being no longer a subsisting contract, and being for every purpose, except to show what were its terms, *functus officio*. The allegation and proof by the defendants of the deed of 1848 ended all

---

---

question as to the rescission of the contract of 1847. The deed of 1848 not having been attacked, it is impossible, in the present state of the pleadings, for the plaintiffs to maintain the position that any equity in favor of Montenegro arose out of the rescission alleged in the complaint—the rescission of the contract of 1847.

Judgment and order reversed, and cause remanded for a new trial.