[S. F. No. 885.   Department One.—November 19, 1898.]

## MORTON BROTHERS, Respondents, v. PACIFIC COAST STEAMSHIP COMPANY, Appellant.

WATER FRONT—CONTROL OF PIERS—POWER OF HARBOR COMMISSIONERS— CONSTRUCTION OF CODE—DELEGATION OF AUTHORITY.—Section 2524 of the Political Code, granting power to the harbor commissioners to "set apart and assign suitable wharves, berths, and landings for the exclusive use of vessels," is to be construed as making the assigning or setting apart of the use of the wharves and landings "exclusive" as against other vessels, and not as including the power to lease the piers, or to give the entire control and occupancy of a pier to the assignee. The power and control over the waterfront, vested in the harbor commissioners by the statute, cannot be delegated to third parties, and it cannot enable a steamship company to grant an exclusive privilege to one transfer company to solicit, upon the pier occupied by its vessels, the carrying of the baggage of passengers therefrom.

ID.—RIVAL TRANSFER COMPANIES—INJUNCTION—FINDINGS.—In an action by a transfer company to enjoin a steamship company, having the exclusive use of certain piers as against other vessels, from interfering with its use of the piers in the interest of a rival transfer company, where the court finds from sufficient evidence that the business of the steamship company does not demand that the plaintiff should be excluded from the piers, a judgment enjoining such interference will be affirmed upon appeal.

ID.—REGULATION BY HARBOR COMMISSIONERS.—The matter of granting or refusing privileges to transfer companies to conduct their business upon the piers, is with the harbor commissioners alone, and is a matter which they should control and manage by reasonable rules and regulations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order granting a new trial.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

George W. Towle, Jr., for Appellant.

Naphtaly, Freidenrich & Ackerman, for Respondent.

GAROUTTE, J.—The Pacific Coast Steamship Company is a common carrier by vessel. Under an agreement and understanding with the board of state harbor commissioners, the com-

pany uses piers Nos. 9 and 11 upon the waterfront in the landing of its vessels. By contract with the Pacific Transfer Company it receives twenty-five per cent of the gross receipts of that company for the exclusive privilege of soliciting upon their piers the carrying of baggage at the times when the passengers on the company's vessels arrive in port. Morton Brothers, carrying on the same line of business as the Pacific Transfer Company, were denied the right by the Pacific Coast Steamship Company to solicit business upon these piers or wharves from passengers landing thereat. Thereafter they brought this action against the Pacific Coast Steamship Company to restrain that company from interfering with them in carrying on that particular business upon these piers. The trial court granted the relief sought, and that decision is now attacked by appeal.

There are a few minor and incidental questions raised by the appeal and discussed by counsel, but we pass them by and take hold of the broad proposition, to wit, what are the rights of the Pacific Coast Steamship Company to and over piers Nos. 9 and 11 under the assignment it has from the board of state harbor commissioners? The source of the authority and control of the harbor commissioners over the waterfront is found in section 2524 of the Political Code, and among the many things enumerated in that section, it is declared that the board of harbor commissioners are empowered to "set apart and assign suitable wharves, berths, and landings for the exclusive use of vessels." Under this grant of power from the state the harbor commissioners by resolution ordered that piers Nos. 9 and 11, commonly known as Broadway wharves Nos. 1 and 2, be assigned to the exclusive use, occupancy, and control of the Pacific Coast Steamship Company, and to the exclusive use and occupancy of the vessels operated by that company. The language of that resolution may be broader than is justified by the powers vested in the harbor commissioners under this section of the Political Code. If so, any attempted grant of authority over these piers to the steamship company in excess of the power vested in the harbor commissioners under the aforesaid section would be void and of no effect. Hence we are not specially concerned in the consideration of the length and breadth of the resolution assigning these piers to the steamship company; but will concede that the

resolution gives to the company all the right to and over these piers which the board of harbor commissioners had the power to grant. These commissioners had power to grant to the steamship company only those rights and interests which the statute declares they may grant. For the power and control over the waterfront delegated by the statute to the commissioners may be exercised by them alone, and they can delegate none of those powers, and no part of that control, to third parties.

If the steamship company has the right to let the use of these piers to a transfer company for the purpose of soliciting from passengers the carriage of baggage, it has the same right to let the privilege to a hotel proprietor to solicit for his business. If it has authority to let these privileges, it has authority to let privileges to persons to carry on upon these piers any and all kinds of legitimate business. If it has the power to sell a single privilege, it has the power to sell any and all privileges. Neither is the question of the right of the company to grant a monopoly to conduct any particular kind of business upon these piers material here, for, if in effect it were a lessee of these piers, it would have a control that would authorize the granting of exclusive privileges. As against the business world, this company either has the control of these privileges, or it has not. It either has the same rights over these piers as it has over the decks of its vessels, as far as the business world is concerned, or it has no rights over them except a use for the loading and unloading of freight and passengers. There can be no halfway station, no divided authority. If the assignment to the company has the legal effect of a lease, these privileges to do business upon the piers are matters solely with the company, and exclusive privileges may be granted at its option. Again, the fact that the privilege granted to the Pacific Transfer Company may be said to relate to the convenience of passengers landing upon the piers is a matter wholly immaterial as in any way assisting to support the company's right to grant it. The power to grant this privilege implies the power to grant any and all legitimate privileges for the conduct of business at that point. While the direct question before the court is not as to the right of the steamship company to grant a privilege to the Pacific Transfer Company to do business upon these piers, yet the solution of that ques-

tion would seem to solve the issue made in this case; for, if the right to grant that privilege vested in the company, then the right to exclude these plaintiffs from the privilege also vested. The power to grant the one is inseparably connected with the power to deny the other.

Until of recent date the harbor commissioners had power to lease these piers to steamship companies, but by express enactment of the legislature that power was revoked; and in lieu thereof they were authorized to "set apart and assign" them. Upon the face of this legislation it is apparent that the state intended to curtail the power of the commissioners in dealing with the waterfront.   Again, it is apparent upon an inspection of the many provisions of this section of the Political Code, that by the assignment or setting apart of these piers to the steamship company the commissioners did not relinquish authority over them, and that under such assignment the relation of landlord and tenant in no sense existed; for, as we have seen, the commissioners were expressly forbidden to create such relation.   The section of the code declares: "The commissioners shall have power to make reasonable rules and regulations concerning the control and management of the property of the state intrusted to them by virtue of this article."   This power still remained in them over piers numbers 9 and 11, after the assignment of the use to the steamship company.

We pass to a consideration of the power vested in the commissioners by the particular language found in the section of the code: "Set apart and assign suitable wharves, approaches, or landings for the exclusive use of vessels"; and as necessarily involved in such consideration, we must ascertain the signification of that language.   The meaning of this provision revolves around the word "exclusive," and we are clear that this word refers to an exclusive use by certain particular vessels.   It can hardly be said to refer to the exclusive use of vessels in general, for the whole waterfront is substantially set apart for the exclusive use, indirectly at least, of vessels.   In other words, the provision means that the harbor commissioners may set apart to particular parties wharves and landings for the exclusive use of their vessels.   Other vessels have no right to use such wharves and landings.   By such construction the word "exclusive" makes

the assigning and setting apart of a use of the wharves and landings exclusive as against other vessels, but could not be construed as giving the entire control and occupancy of these wharves and landings to the assignee. The measure of the power of the harbor commissioners is found in this language, and, such being its construction, the assignment to the steamship company only gave that company the exclusive privilege of using these piers in the loading and unloading of freight and passengers. In all other things these piers are under the control and authority of the harbor commissioners, and subject to all reasonable rules and regulations they may promulgate.

The trial court made a finding of fact to the effect that the proper conduct of the business of the steamship company in the use of these piers does not demand that these plaintiffs should be excluded therefrom upon the arrival of vessels. In other words, the presence upon those piers of these plaintiffs soliciting business upon the arrival of the defendant's vessels is not an infringement upon defendant's use. This finding is supported by the evidence. The evidence may be said to disclose the fact that, if these plaintiffs are allowed the privilege, then all other transfer companies must be allowed the same privilege, and the presence of all these parties upon the piers would interfere with defendant's use, but it is sufficient to say that as to the result to the defendant's use of the presence of all these persons upon the piers soliciting business, we are not now concerned. We are dealing with the plaintiffs alone, and if the interference or noninterference of plaintiffs with the defendant's use is a material question here, then plaintiffs have the finding of fact to their credit. But it may be said, in conclusion, that this matter of granting or refusing privileges of the kind here involved is a matter with the harbor commissioners alone, and a matter which they should control and manage by reasonable rules and regulations.

Various cases are cited by opposing counsel to support their respective views. We find none of them directly in point. The question here is one largely of statutory construction, and general principles of law aid us but little in declaring the true conclusion. We are satisfied plaintiffs are authorized to bring this action.

For the foregoing reasons the judgment and order are affirmed.

Harrison, J., and Van Fleet, J., concurred.

Hearing in Bank denied.