STATE *ex rel.* HAMMOND *et al. v.* WIMBERLY *et al.*

(*Knoxville*, September Term, 1946.)

Opinion filed October 15, 1946.

ELY & ELY, of Knoxville, for complainants.

J. W. BAKER, TAYLOR H. COX and R. R. KRAMER, all of Knoxville, for defendants.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The chancellor sustained the demurrer of the defendants to the injunction bill filed herein and the appeal to this Court resulted.

The object of the bill is to prevent, by injunctive processes, the holding of a recall election in the City of Knoxville to determine whether or not the complainant, Cas Walker, shall be removed from the office of Mayor and also certain councilmen of the city.

The petitions seeking a recall election were duly filed with the Commissioners of Elections of Knox County. Each petition bore a large number of signatures, purportedly of persons who represented themselves to be qualified voters of the City of Knoxville.

On May 6, 1946, complainant Hammond filed this bill in the chancery court stating that the defendants Commissioners of Elections were about to certify as sufficient the recall petitions heretofore referred to (1) without removing therefrom allegedly forged signatures; (2) without removing therefrom pages which allegedly bore defective affidavits; (3) without removing therefrom signatures allegedly obtained through misrepresentation; (4) without removing therefrom the names of all persons who either at the time of signing the petitions, or at the time the petitions were filed, had not been registered for a period of twenty days, and had not held a poll tax receipt for a period of sixty days; (5) without removing therefrom the names of signers who, prior to the time the Commissioners acted upon the petitions, had made written request for the withdrawal of their names; and (6) without publishing in full the petitions in some local newspaper.

The bill charged that the Commissioners had acted arbitrarily in performing the task just mentioned, and the bill prayed for an injunction and an alternative writ of

mandamus.    Thereupon the defendants filed their demurrer.

This lawsuit involves the proper construction of section 98 of the charter of the City of Knoxville, Private Acts 1923, Chapter 412, which reads as follows:

"Be it further enacted, That any Councilman-at-large of the City of Knoxville elected under this Act may be removed from office by the qualified voters of said city; the procedure to effect such removal shall be as follows: A petition signed by the qualified voters equal in number to at least thirty per cent of the total vote case for all candidates for the office of City Judge at the last regular election demanding the election of a successor to the person sought to be removed shall be filed with the Commissioners of Election of Knox County, and notice given of such filing by publication at least once in one of the daily newspapers published in said city, which petition shall contain a general statement of the grounds upon which the removal is sought; the signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving his street and number, or the location of his real estate, and in what election precinct he intends to register and vote, if he votes by reason of property qualification.  One of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be; within fifteen days from the date of the filing of said petition, said Board of Election Commissioners shall examine the same and ascertain whether it is signed by the required number of persons, and whether such persons are qualified voters as shown by the registration books, and they

shall attach to said petition their certificate showing the result of such examination. If, by the said certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate. The Board of Election Commissioners shall, within fifteen days after such amendment, make like examination of the amended petition, and if their certificate shall hold the same to be insufficient, it shall be returned to the persons filing it. If by their certificate the petition is shown to be sufficient, the said Board of Election Commissioners shall at once fix a date for holding the said election, not less than thirty days nor more than sixty days from the date of their certificate, showing that a sufficient petition is filed. The Commissioners of Election shall make, or cause to be made, publication of notice and all arrangements for holding said election, and the result thereof declared, and the expenses thereof paid, in all respects as in other city elections.''

The chancellor held that a court of equity generally has no jurisdiction to enjoin an election nor any steps necessary or preliminary thereto.

In *Buena Vista Special School District et al.* v. *Board of Election Commissioners of Carroll County et al.*, 173 Tenn. 198, 201, 116 S. W. (2d) 1008, 1009, this Court said: ''It is quite generally declared that a court of equity will not enjoin the holding of an election. Voters ordinarily have no such special interest in the matter as will justify them in seeking an injunction. Further, no one can tell what the result of an election will be and no complainant can say that he will be adversely affected by an election. Some courts refuse an injunction on a broader ground that the power to hold an election is a political power and that equity has no jurisdiction to restrain officers en-

trusted by law with the duty of holding elections from exercising such power.''

In the case of *City Council of City of McAlester* v. *Milwee,* 31 Okl. 620, 122 P. 173, 40 L. R. A. (N. S.), 576, which involved the calling and holding of a recall election of certain city officers and in which the trial court enjoined the proposed election, the Supreme Court of Oklahoma said: ''Counsel for the respective parties seem to have refrained from presenting to this court the question whether the parties plaintiff below as taxpayers had such an interest in the subject-matter of the suit as to entitle them to prosecute the same, and whether a suit in equity will lie to enjoin the calling of an election. They say that, whilst the first of these contentions may be made upon authority, they are so anxious to have this court pass upon the case upon its merits that they do not wish to urge that question in this court. The court does not take that view of the matter; we think it is time enough to pass upon such important questions when they are reached in due course, with proper parties, in a proper proceeding. Many applications have been made to this court to interfere with the holding of elections of one kind or another by the exercise of some of the high prerogative writs over which original jurisdiction has been vested in this court by the Constitution, all of which have been consistently refused. As the question is jurisdictional, we cannot overlook the uniform practice merely because counsel do not wish to make that point. Courts of equity are only conversant with matters of property and the maintenance of civil rights and will not interfere to enforce or protect purely political rights. This doctrine has been universally applied in other jurisdictions where equity has been invoked to interfere in matters preceding an election.''

It is insisted, however, that the defendants have wholly and arbitrarily failed and refused to perform any of the duties required of them by the city charter in connection with said petitions.

The law recognizes certain duties of public officials as ministerial and others as discretionary or *quasi* judicial. This Court, in the case of *State ex rel. Millers Nat. Ins. Co.* v. *Fumbanks*, 177 Tenn. 455, 462, 151 S. W. (2d) 148, 150, quoted from 38 C. J. 598, as follows: "While there is some conflict of opinion as to what constitutes, strictly speaking, a ministerial duty as distinguished from a discretionary duty, and while it is not always easy to determine where the line of demarcation lies between a ministerial act and an act involving the exercise of judgment, the distinction between merely ministerial and judicial and other official acts is generally said to be that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial." Also, see *State ex rel.* v. *Meador*, 153 Tenn. 634, 284 S. W. 890.

Under said section 98 of the city charter, we are of opinion that some of the duties prescribed therein of the Commissioners of Elections are ministerial, such as fixing the date of the election, publication of notice, etc. There are many duties, however, that are discretionary. To maintain the writs in their present scope would entail reading into the charter duties and modes of procedure not prescribed and would constitute an invasion of the jurisdiction vested by law in the Commissioners of Elections and be an encroachment upon their prerogatives.

In the case of *Insurance Co.* v. *Craig,* 106 Tenn. 621, 639, 62 S. W. 155, 159, this Court said: "The rule is so general and obvious as to be almost axiomatic, that a public officer clothed with discretionary or *quasi* judicial power, as contradistinguished from mere ministerial duty, cannot be coerced by *mandamus* or restrained by injunction in the exercise of his judgment under that power; otherwise the court would substitute its judgment for his, which is not permissible."

Subject to the specific provisions contained in section 98 of the city charter, the Commissioners are the judges of the sufficiency of the petitions. The Commissioners must act in the performance of their duties as any other official board, although of necessity certain of its routine functions may be delegated.

This being our view in the case, it is not necessary for us to pass upon other questions appearing in the record.

For the reasons stated, we are of opinion that there is no error in the decree of the chancellor and it is affirmed.