[Civ. No. 18885. Second Dist., Div. Two. May 9, 1952.]

VITA-PHARMACALS, INC. et al., Appellants, v. BOARD OF PHARMACY et al., Respondents.

Edwin M. Rosendahl and Eugene M. Elson for Appellants.

Edmund G. Brown, Attorney General, and Carl W. Wynkoop, Deputy Attorney General, for Respondents.

MOORE, P. J.—In July, 1950, the Board of Pharmacy adopted, as a new rule, regulation numbered 1747 to be a part of the California Administrative Code and Register.[1] The meeting of the board was held December 16, 1949, pursuant to section 29041 of the Health and Safety Code.[2] The first

[1] *Article 6. Dangerous Drugs.* Rule 1747. All estrogenic and androgenic substances, except whole glands and external preparations containing 10,000 international units or less per ounce, constitute dangerous drugs as defined by section 29001 of the Health and Safety Code.

[2] Section 29041, Health and Safety Code.

"The board, if after open hearing following due notice to persons who have filed written requests for such notice to the board it shall find any drug to be dangerous to the public health or safety, may make

indication to the public of the purpose of the board was contained in a letter of January 17, 1950, which implied that a decision had been made to include hormones in the dangerous drug list. It stated that "the purpose of the hearing is to amend the Dangerous Drug Act to officially incorporate therein as dangerous drugs substances 'with estrogenic and androgenic action to be classified as dangerous drugs, and to be restricted to prescription only." The rule was adopted at the board's meeting of July 24, 1950, and on November 13, 1950, it caused the rule to be filed in the office of the Secretary of State. It became effective after the lapse of 30 days. (Gov. Code, § 11422.)

Appellants attended some of the hearings of the board and presented a transcript of the evidence theretofore taken in the District Court of the United States for the Southern District of California in an action in which the Pure Food and Drug Division of the federal government had attempted to restrict the sale of hormone products in interstate commerce. Thereafter, appellants sought to have the board reconsider its action and requested open hearings on their petition on new evidence to be submitted and on their arguments to show that the board had acted outside the scope of the authority vested in it. The petition was denied.

Thereupon appellants filed this action wherein they charged that respondent board and its constituent members had predetermined arbitrarily and in abuse of discretion to restrict the sales of the substances named in the rule, alleged that respondents had not read or considered the evidence contained in the transcript presented by appellants, and had refused to grant appellants a hearing. They allege other facts upon which they claim, because a controversy has arisen between them and respondents, that irreparable damage will result to them by virtue of the enforcement of the regulation; that pursuant to Government Code, section 11440, they are entitled to a decree that regulation 1747 be nullified and that estrogenic[3] and androgenic substances, commonly called male hormones, be declared not dangerous to the public health

---

other rules, not inconsistent with this division, limiting or restricting the furnishing of such drug. Any violation of any such rule shall be punished in the same manner as is respectively provided in Sections 29026, 29027 and 29028."

[3]Androgen: Any substance which possesses masculinizing activities such as testis hormone. Estrogen: A generic term for estrus producing compounds. (American Illustrated Medical Dictionary, 22d Edition, 1951, Dorland.)

and safety, salable without a physician's prescription. Following a trial of the issues presented by the pleadings the trial court found in favor of respondents, against the contentions of appellants and adjudged that regulation 1747 is valid and that in the proceedings relating thereto there was no substantial failure to comply with the provisions of title 2, division 3, part 1, chapter 4, article 4 of the Government Code relating to procedure for adoption of administrative regulations.

Appellants now seek a reversal of the judgment on the grounds that (1) they were not afforded a fair hearing by respondent board, and (2) the trial court erred in rejecting certain testimony offered in appellants' behalf.

The record reveals that respondent board pursuant to authority vested in it by section 29041 of the Health and Safety Code held two meetings, one in Los Angeles on February 7, 1950, and a second in San Francisco one week later to determine whether the androgenic and estrogenic substances should be classified as dangerous within the definition prescribed by section 29001 of that code. At the Los Angeles meeting, the board received into evidence on behalf of appellants the transcript of testimony reported at a previous proceeding in which the Pure Food and Drug Division of the United States government had sought to enjoin appellants' sale of the same drug here involved without prescription.[4] In addition to that evidence, various newspaper articles, statements of medical doctors, and publications pertaining to hormones were introduced into evidence before the board. On May 26 and 27, 1950, in Sacramento a group known as the Dangerous Drug Committee met to review the evidence submitted to the board at the prior hearings. This committee was composed of Messrs. Affleck, Ramsay and Waterman, three members of respondent board whose full complement is seven. On July 29, the committee reported to the board and reviewed in detail its analysis of the evidence. When in October, 1950, a final board meeting was held to discuss the evidence, all members voted in favor of the regulation now under attack.

The testimony of the three committee members established that they had made an exhaustive study at their May session

---

[4] Such injunction was denied by the Federal District Court, but on appeal the judgment was reversed and the case remanded with directions to issue a permanent injunction. See *United States* v. *El-O-Pathic Hudson Product Co.*, 192 F.2d 62.

of all material presented to the board. All statements and documents were considered as well as the portions of the federal transcript designated by appellants as relevant and material. Such evidence was thoroughly discussed, analyzed and evaluated. A summary of all documentary evidence introduced as well as the testimony of expert witnesses was prepared and it was read and discussed before the board at subsequent meetings. This testimony of the committee members was supported by the witness Linnet M. Walsh, executive secretary of the board. He testified that the substance of the proof on both sides of the controversy, the written statements of medical doctors and the federal court transcript were listed and discussed and that the participants made notes of the discussion and all material was thoroughly reviewed. All board members testified that a complete report was given to the board at the July meeting and that the committee's written findings were presented and fully discussed before any vote was taken. It was admitted that the board members other than those present at the committee meetings had not read in its entirety the documentary evidence introduced.

Appellants contend that the record, briefly summarized above, establishes that they did not receive a fair hearing; that Government Code, section 11425, provides in part that the "state agency shall consider all relevant matter presented to it before adopting, amending or repealing any regulation"; that the term "agency" could mean only that at least a majority or quorum of a state agency must consider all "relevant matter" before any valid action can be taken by the agency. Moreover, they contend that when by statute the duty of considering evidence is given to an agency consisting of several members it cannot in turn delegate such power to a subcommittee since such action amounts to a decision by a minority of those in whom the Legislature has seen fit to vest the power of regulation.

The answer to such argument is that, contrary to appellants' assertion, the decision here was made by the board and not by the committee. Only after full and complete discussion of the facts was a vote had. They considered the written statements of the doctors filed in lieu of oral statements, the federal transcript, all excerpts, newspaper clippings, all documents on file, all exhibits. The reports of the committees, the exhibits, the testimony and documents were reviewed at open hearings at which there was considerable discussion.

The committee was granted no power to decide anything. They were to analyze in detail the totality of the evidence and present it in intelligible language easily understood by the members of the board. They were not invested with power, but merely served as the mixing machine to make the compound more agreeable, more readily grasped. Such ministerial functions (see Bouvier's Law Dictionary, p. 2219) do not denote the delegation of powers to subordinates or to a group lesser than the whole. (*Holley* v. *County of Orange*, 106 Cal. 420, 424 [39 P. 790]; *House* v. *Los Angeles County*, 104 Cal. 73, 79 [37 P. 796]; *Rutledge* v. *City of Eureka*, 195 Cal. 404, 413 [234 P. 82].) ▆ Moreover, in acting upon a proposal to amend the Administrative Code and Register, the Board of Pharmacy sits in its legislative capacity to enact a regulation and not in its quasi-judicial character in which it determines the rights of petitioners and others properly brought before it for consideration.

A contention similar to that now made by appellants was before the United States Court of Appeal for the Ninth Circuit in *National Labor Relations Board* v. *Biles Coleman Lbr. Co.*, 98 F.2d 16. In reply to the argument that due process had been denied the defendant when the board members had not read and examined all the evidence and exhibits before it for consideration, the court held that such action did not necessarily constitute an unfair hearing. It relied on *Morgan* v. *United States*, 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288], where it was pointed out that such evidence could properly be sifted and analyzed by competent subordinates without doing violence to the concept of due process in administrative hearings. In the Morgan case, the Secretary of Agriculture did not read the transcript and knew the evidence only as reported to him by his subordinates. ▆ The essential requirement of due process is met when the administrative agency is required to determine the existence or otherwise of the necessary facts before any decision is made. Such a discretion is not so unguided as to invalidate the statute. (*Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 362 [203 P.2d 37].) ▆ Due process is not concerned with mere technical formalism: it is the substance that determines whether a litigant has been deprived of it. (*Hohreiter* v. *Garrison*, 81 Cal.App.2d 384, 401 [184 P.2d 323].) The rule against the delegation of power by local boards is not violated by a board's authorizing a committee of one or more members or other persons to dis-

charge duties ministerial in character and not calling upon such persons to exercise discretion or judgment. (*Holley* v. *County of Orange, supra.*) ■ Even the Legislature of this state may delegate a committee of its own members or others to correlate information and make recommendations. The Constitution does not prohibit the delegation of such incidental and subordinate tasks. ■ "The ascertainment of facts, in its essence is not a legislative function. It is simply ancillary to legislation." (*Parker* v. *Riley*, 18 Cal.2d 83, 91 [113 P.2d 873, 134 A.L.R. 1405].)

*State ex rel. Madison Airport Co.* v. *Wrabetz*, 231 Wis. 147 [285 N.W. 504], emphatically relied upon by appellants, is not persuasive. There the evidence was presented to two different hearing officers who in turn, in disregard of the state agency, made the ultimate determination. That decision was subject to review by a commission upon petition by the aggrieved party. The Wisconsin statute provided that any action taken upon review "shall be based on a review of the evidence." It was held that the commission's action in affirming the findings of the hearing officer was void, since it had been shown that the commissioners had failed to read or have read to them a transcript of the evidence or phonographic notes thereof, "*or to otherwise duly address themselves to that evidence.*" Such is not the situation in the action at bar. Respondent board has afforded all interested parties a full and fair hearing. Before adopting its regulation 1747, it considered all relevant evidence submitted to it pursuant to the requirements of section 11425. Not in the least does the record reveal any arbitrary action or other abuse of discretion.

■ No prejudice was suffered by appellants by reason of the trial court's refusal to admit the testimony of Dr. Swim offered on behalf of appellants. Dr. Swim had testified at the trial in the federal court and presumably such testimony was considered by the committee during its scrutiny of the transcript thereof. Moreover, insofar as the witness might have reported the results of research and study in the hormone field subsequent to the board hearings here under consideration, it could not in the slightest bear upon the alleged impropriety of respondent's action when such evidence was not in existence at the time of the hearings by respondent board upon appellants' petition.

■ The judicial review below was limited to an examination of the proceedings before the board to determine

whether the action taken was arbitrary or capricious or lacking in evidentiary support and whether the procedure followed was calculated to provide a fair hearing pursuant to statutory requirements. (*Brock* v. *Superior Court,* 109 Cal. App.2d 594, 604-605 [241 P.2d 283].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 7, 1952.