[Civ. No. 31789. Second Dist., Div. Two. Jan. 30, 1968.]

SIDNEY SCHECTER et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

Lemaire, Mohi & Morales, Lemaire, Mohi, Morales & Dumas and Cy H. Lemaine for Plaintiffs and Appellants.

Harold Kennedy and John D. Maharg, County Counsel,

George W. Wakefield, Assistant County Counsel, and Norman J. Gilbert, Deputy County Counsel, for Defendants and Appellants.

ROTH, P. J.—This is an appeal by the County of Los Angeles and the Board of Supervisors of the County of Los Angeles (hereinafter referred to as County and Board) stemming from a judgment in a representative action brought by certain named petitioners (hereafter referred to as Bailiffs) for themselves and on behalf of 137 other County employees. The judgment granted a peremptory writ of mandate ordering the Board to amend the applicable salary ordinance necessary to implement the reclassification sought by Bailiffs and ordered by the judgment, said amendment to be effective January 1, 1967.

Bailiffs appeal from the portion of the judgment which ordered the operative and effective date of the mandate to be January 1, 1967, instead of July 13, 1966, the date the purported reclassification was made by the Civil Service Commission.

The principal issue is the validity of an action taken by the Civil Service Commission of County contrary to the determination of its chief deputy purporting to abolish the civil service class of Deputy Sheriff, Civil Bailiff and to allocate the duties of that class to the general class of Deputy Sheriff.[1]

Prior to this controversy there have been two basic classes of deputies in the sheriff's department in the classified civil service of County: Deputy Sheriff and Deputy Sheriff, Civil Bailiff. A person classified as a deputy sheriff, "Performs law enforcement work such as radio car patrol, criminal investigation, identification and apprehension, serving of legal process, or working as criminal court bailiff, or performs maximum security prisoner custody work." The physical requirement is listed as "arduous." The Deputy Sheriff, Civil Bailiff,

---

[1] Rules of the Civil Service Commission, § 3.04 provide in pertinent part:

"The Secretary and Chief Examiner appointed by the Commission, in addition to acting as secretary of the Commission, shall

"(a) Be the general manager and executive officer of the Civil Service Department, responsible to the Commission;

". . . . . . . . . . . .

"(h) Classify all positions in the classified service, maintain a schematic list of all classes in the classification plan, and prepare and maintain specifications for each class;"

"Serves as civil court bailiff with responsibility for maintaining order in a courtroom." The physical requirement is listed as "moderate."

The salary ordinance in effect for the fiscal year 1966-1967, provides for salaries and numbers of persons for the two classes as follows:

(1) Deputy Sheriff, Civil Bailiff; 127 positions; monthly salary to $696.

(2) Deputy Sheriff, Civil Bailiff; as needed; 10 positions; monthly salary to $696.

(3) Deputy Sheriff; 2,650 positions; monthly salary to $755.

The Los Angeles County Employees Association pursuant to a written policy theretofore adopted in March 1966 as representatives of Bailiffs, asked for a civil service hearing on the subject classification.

At the suggestion of the chief deputy[2] of the commission, who then had the power and duties of the secretary and chief examiner (see footnote 1 *supra*) because of a vacancy in the latter position (Rules of the Civil Service Commission, § 3.05), action was postponed to permit the classification division of his staff to meet and confer with Bailiffs' representatives.

Bailiffs and their representatives met with a staff member of the classification division on March 16, 1966. The staff member announced he would recommend that a new class position be created to include both civil and criminal bailiffs to be referred to as "Deputy Sheriff, *Court* Bailiff."

Pursuant to Rule 6.04(a) of the Civil Service Commission,[3] Bailiffs, at the suggestion of the chief deputy, requested a review of the proposed classification with Richard Wightman, chief of the classification division. Wightman made a review of the classification and concurred with the decision of the staff member of his division.

---

[2] "In the absence of the Secretary and Chief Examiner, the Chief Deputy shall have all the powers and duties of the Secretary and Chief Examiner."

[3] Rule 6.04(a) provides: "Any employee or appointing power affected by any classification action may request the Secretary and Chief Examiner to review such action. Such request for review by the Secretary and Chief Examiner shall be made in writing within 30 days of notification of such action."

On March 22, 1966, Bailiffs appealed to the commission under rule 6.04(b)[4] and requested a hearing.

Two days later, on March 24, the Board approved a request from the County's chief administrative officer that the commission instruct its staff to "review all bailiff assignments in the Superior Court with a view toward allocating them to a single classification, . . ." and "report their findings to the Chief Administrative Officer and the Sheriff, so that appropriate position titles and salaries can be included in the budget."

At its meeting of June 29, 1966, the commission "Granted the request of the County Employees Association for a hearing to consider a classification change from Civil Bailiff to Deputy Sheriff." On July 6, the commission "Ordered that the decision . . . on the classification of Civil Bailiff be made after a review of written materials from all parties, under Rule 5.01,[5] at the special meeting of July 11, 1966 or on a later date." The commission, at its July 13 meeting decided "after a review of written materials submitted by all parties, that the single class of Deputy Sheriff be used for bailiff positions in both civil and criminal courts and further that the class of Deputy Sheriff, Civil Bailiff be deleted."

The Board, although advised on July 15, 1966 of the commissioner's action, refused to implement the reclassification by amending the salary ordinance. Bailiffs' petition for a writ of mandate thereafter filed, was granted by the superior court and the Board was ordered to amend the salary ordinance as of January 1, 1967.

Article XI, section 7½ of the California Constitution provides in pertinent part as follows:

"1. For boards of supervisors and for the constitution, regulation and government thereof. . . .

"5. For the fixing and regulation by boards of supervisors, by ordinance, of the appointment and number of assistants,

---

[4]Rule 6.04(b) provides: "After notification of the results of such review by the Secretary and Chief Examiner the employee or appointing power affected may appeal therefrom to the Commission. Such appeal shall be made not later than ten business days after date of notification of results of review . . . ."

[5]Rule 5.01 provides: "Any person entitled to a hearing before the Commission under the Charter or these Rules, or adversely affected by any action or decision of the Secretary and Chief Examiner, or of the Commission made without notice or an opportunity for such person to be heard, may petition for a hearing before the Commission.

"At the discretion of the Commission, in cases other than discharge or reduction, a decision on the petition may be made after a review of written materials submitted by all parties concerned."

deputies, clerks, attachés and other persons to be employed from time to time, in the several offices of the county, and for the prescribing and regulating by such boards of the powers, duties, qualifications and compensation of such persons, the times, at which, and terms for which they shall be appointed, and the manner of their appointment and removal. . . ."

Pursuant to this section, the county enacted a freeholders charter which contained Article IX, creating the Civil Service Commission. Section 34 specifically provides that:

"The Commission shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of the law. . . .

"The rules shall provide:

"(1) For the classification of all positions in the classified service."

It appears from the language of this section of the charter that the power for classification of positions is specifically given to the commission. County and Board, however, assert that the commission, through its enacted rules, delegated classification power to the secretary and chief examiner, retaining for itself merely the ministerial power to approve or disapprove his decision. As a basis for this contention they cite the following three sections of the Rules of the Commission:

Rule 3.04, which provides that the Secretary and Chief Examiner "shall . . . (h) [c]lassify all positions in the classified service. . . ."

Rule 6.01, which provides that "Each position in the classified service shall be classified by the Secretary and Chief Examiner. . . ."

Rule 6.03, which provides that "The Secretary and Chief Examiner shall make position classification studies . . . [and that] [s]ubject to the approval of the Commission, the Secretary and Chief Examiner shall report any classification action to the Chief Administrative Officer and the appointing power concerned."

The general rule under the maxim *"delegatus non potest delegare"* is that a delegated power, when made subject to the delegatee's judgment or discretion, is purely personal and may not be further delegated in the absence of express statutory authorization. *(Morton Bros. v. Pacific Coast S.S. Co., 122 Cal. 352, 353-355 [55 P. 11]; Webster v. Board of Education, 140 Cal. 331, 332 [73 P. 1070]; Shreveport Engraving Co. v. United States (5th Cir. 1944) 143 F.2d 222, 226).)* Merely administrative and ministerial

functions may be delegated to assistants whose employment is authorized, but there is no authority to delegate acts discretionary or quasi-judicial in nature. An administrative board cannot legally confer upon its employees authority that under the law may be exercised only by the board. (*House* v. *Los Angeles County,* 104 Cal. 73, 79 [37 P. 796]; *Holley* v. *County of Orange,* 106 Cal. 420 [39 P. 790]; *Vita-Pharmacals, Inc.* v. *Board of Pharmacy,* 110 Cal.App.2d 826, 830-831 [243 P.2d 890]; *Shreveport Engraving Co.* v. *United States, supra;* 2 Am.Jur.2d 52-53.)

■ The county charter specifically placed the power of classification in the commission. This power involved the exercise of discretion and cannot be said to be merely ministerial in nature.[6] The commission could not therefore delegate the duty of final classification of positions to the secretary and chief examiner.

■ When an act or duty is discretionary the information and data needed for the exercise thereof, such as in the situation at bench, need not be personally gathered. ". . . the rule that requires an executive officer to exercise his own judgment and discretion in making an order of such nature does not preclude him from utilizing, as a matter of practical administrative procedure, the aid of subordinates directed by him to investigate and report the facts and their recommendation in relation to the advisability of the order, and also to draft it in the first instance. [Citations.] It suffices that the judgment and discretion finally exercised and the orders finally made by the superintendent were actually his own; and that there then attaches thereto the presumption of regu-

---

[6]The court in *Elder* v. *Anderson,* 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48], states the following:

"Discretionary acts are those wherein there is no hard and fast rule as to the course of conduct that one must or must not take and, if there is a clearly defined rule, such would eliminate discretion. (*Goodman* v. *Goodman,* 68 Nev. 484 [23￠ P.2d 305].)

"In the case of *Blalock* v. *Johnston,* 180 S.C. 40 [185 S.E. 51, 54, 105 A.L.R. 1115] 'discretion' is defined as follows: 'Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed. But when a positive duty is enjoined, and there is but one way in which it can be performed lawfully, then there is no discretion.'

"In *State* ex rel. *Hammond* v. *Wimberly,* 184 Tenn. 132 [196 S.W.2d 561, 563], the court stated: '. . . where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not to be deemed merely ministerial.'"

larity in order to effectuate the intent manifested thereby.'' (*School Dist. No. 3 of the Town of Adams* v. *Callahan,* 237 Wis. 560 [297 N.W. 407, 415, 135 A.L.R. 108] ; see also *Ledgering* v. *State of Washington,* 63 Wn.2d 94 [385 P.2d 522, 526].)

█ While it is true that the rules of the commission have ''the force and effect of law,'' such rules must be in consonance with the fundamental principles expressed in the charter. (See *Campbell* v. *City of Los Angeles,* 47 Cal.App.2d 310, 312-313 [117 P.2d 901] ; *Mitchell* v. *McKevitt,* 128 Cal. App. 458, 461 [17 P.2d 789].) Rules not in conformity with the charter provisions will be given no effect.

County and Board rely heavily on the case of *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 72 [187 P.2d 686], to bolster their position. In this case, the Marin County Planning Commission denied an application for a use permit pursuant to an ordinance conferring such power on it. The board of supervisors began to hear the matter, and the trial court enjoined the board from attempting to overrule the commission by granting a use permit under the ordinance. The Supreme Court, in a four to three decision, upheld the trial court. The county ordinance in question had been passed pursuant to the State Planning Act and provided, '' 'The Planning Commission, *subject to the approval and confirmation* of the Board of Supervisors in each case, as hereinafter provided, *shall have the power to grant* adjustments and variances in any of the provisions of the ordinance. . . .' (Italics added.)'' The court states that: ''The board of supervisors is given power merely to approve or refuse to approve the decision of the commisson approving the application for a permit; the board of supervisors is given no authority over the application should the commission deny it. Since the only procedure for granting use permits is that specified in [the ordinance] for variances and adjustments, it follows that the board of supervisors was not authorized by the ordinance to take affirmative action on the application for a use permit in the face of the disapproval thereof by the planning commission.'' (31 Cal.2d at page 73.)

In *Johnston,* the county ordinance specifically gave the power to grant adjustments and variances to the Planning Commission subject to the approval of the board. In the case at bench the power of classification was granted by the county charter not to the secretary and chief examiner, but to the Civil Service Commission.

Bailiffs, in their appeal allege that the trial court should have made its writ of mandate operative on July 13, 1966, the date the classification was made by the commission, rather than January 1, 1967, the date of the next semi-annual amendments to the salary ordinance were made by the Board to implement the recent reclassification. This issue is raised by Bailiffs for the first time on appeal. The pleadings uniformly sought an operative and effective date as of January 1, 1967. Moreover, while it was stipulated by opposing counsel that the County had funds with which to pay a required salary increase as of January 1, 1967, there was no evidence introduced that the County had such funds as of any other date. Finally, Bailiffs' counsel admitted at trial that the Board had "a reasonable time to pass the [salary] ordinance or to implement the reclassification."

No evidence was presented to show that semi-annual amendments to the salary ordinance were not reasonable. "Statements of alleged fact in the briefs on appeal which are not contained in the record and were never called to the attention of the trial court will be disregarded by this court on appeal." (*Knapp* v. *City of Newport Beach,* 186 Cal.App. 2d 669, 679 [9 Cal.Rptr. 90]; see also *Gantner* v. *Gantner,* 39 Cal.2d 272, 278 [246 P.2d 923]; *Loving & Evans* v. *Blick,* 33 Cal.2d 603, 613-614 [204 P.2d 23]; *Lady* v. *Barrett,* 43 Cal. App.2d 685, 686 [111 P.2d 702].)

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied February 27, 1968, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied April 24, 1968.