TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------
                              :
          OPINION             :
                              :
            of                :
                              :  No. 88-305
   JOHN K. VAN DE KAMP        :
     Attorney General         :  July 19, 1988
                              :
   ANTHONY S. DaVIGO          :
  Deputy Attorney General     :
                              :
-------------------------------------------------------------------

        THE HONORABLE GARY K. HART, MEMBER OF THE CALIFORNIA
STATE SENATE, has requested an opinion on the following question:

        May two or more school districts establish a Joint Powers
Agency to contract with a private entity to secure agreements by
suppliers to furnish supplies to member districts at guaranteed
minimum prices for a designated period, if the private entity
complies with the competitive bidding procedures applicable to
school districts?

CONCLUSION

        Two or more school districts have no authority to
establish a Joint Powers Agency to contract with a private entity
to secure agreements by suppliers to furnish supplies to member
districts at guaranteed minimum prices for a designated period.

ANALYSIS

        We are advised that school districts in California spend
millions of their limited dollars each year on necessary supplies
and equipment.  Although necessary, these supplies are often
purchased through inefficient means.  School districts are often
limited to purchasing supplies in the geographical area in which
they operate.  Furthermore, they are often forced to purchase at
market prices reflecting the low quantities which are ordered.
They also face storage and warehousing constraints, as well as an
inability to calculate future needs when supply quantities must be
ordered.

        We are further advised in the premises that, faced with
increasing budgetary constraints, school districts are attempting

to become more efficient in their operation.  Many school districts in California have expressed an interest in forming a joint powers agency (JPA) which would contract with a private third party to secure agreements by suppliers to furnish supplies to member districts at a guaranteed minimum price for one year.  The private entity would comply with the competitive bidding procedures applicable to school districts, but on a broader scale and geographical area.  The supplier would by its bid and confirmation after notice of award, agree to fill all orders of member districts at the designated price for one year.  Pursuant to this agreement, each member district would order supplies as needed from the listed providers.  We are asked whether such an arrangement would be lawful.

The Joint Exercise of Powers Act is codified in Government Code section 6500 et seq.  The latter section provides that, as used in the Act, the term "public agency" includes, inter alia, a "public district of this state."  "Public district" includes "school district."  (15 Ops.Cal.Atty.Gen. 108, 109 (1950).)  Section 6502 provides in part:

"If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise any power common to the contracting parties, even though one or more of the contracting agencies may be located outside this state.

"It shall not be necessary that any power common to the contracting parties be exercisable by each such contracting party with respect to the geographical area in which such power is to be jointly exercised."

It is clear from that section that each member agency of a JPA must have independent authority to perform the activity agreed to be performed jointly.  In this regard we stated in 66 Ops.Cal.Atty.Gen. 183, 185 (1983):

"The Joint Exercise of Powers Act was construed in The City of Oakland v. Williams (1940) 15 Cal.2d. 542, 549 as follows:

"'The statute means nothing if it does not mean that cities may contract in effect to delegate to one of their number the exercise of a power or the performance of an act in behalf of all of them, and which each independently could have exercised or performed.  A statute thus authorizing the joint exercise of powers separately possessed by municipalities cannot be said to enlarge upon the charter provisions of said municipalities.  It grants no new powers but merely sets up a new procedure for the exercise of existing powers.'

"In 30 Ops.Cal.Atty.Gen. 73, 74 (1957) we pointed out that section 6502 'requires that each of the public agencies which are parties to an agreement must have the independent power to do the act for which they contract under the Joint Powers Act.' (See also 56 Ops.Cal.Atty.Gen. 571, 581 (1973); 60 Ops.Cal.Atty.Gen. 148, 151 (1977) and 60 Ops.Cal.Atty.Gen. 206, 207 (1977).)"

In the last cited opinion we pointed out that while the Act grants no new powers, it does provide for the joint exercise of existing allocated powers, including by implication all those essential to the specific allocation. (60 Ops.Cal.Atty.Gen., supra, 207.)

We are not concerned at this juncture whether the activity here in question involves the use of discretion. It is generally true, of course, that a public agency may not, unless authorized by law, delegate a function constituting a public trust the exercise of which inescapably requires the use of such reason and discretion as may only be accomplished by action of the agency itself (Cf. Webster v. Board of Education (1903) 140 Cal. 331; Knight v. City of Eureka (1898) 123 Cal. 192, 194-195; 63 Ops.Cal.Atty.Gen. 240, 243 (1980).) However, Government Code section 6502, supra, expressly allows for the exercise of any common power.[1] Examples of powers which we have found are properly exercised by school districts under a JPA include the building and operation of a common gymnasium (15 Ops.Cal.Atty.Gen. 108 (1950)), the adoption of a system of group insurance for the benefit of employees (23 Ops.Cal.Atty.Gen. 146 (1954)), and the employment of private counsel for legal services in connection with employee relations (60 Ops.Cal.Atty.Gen., supra, 206.)

Manifestly, each school district is authorized to enter into a contract for the procurement of materials and supplies. Public Contract Code section 20111 provides:

"The governing board of any school district shall let any contracts involving an expenditure of more than fifteen thousand dollars ($15,000) for work to be done or more than twenty-one thousand dollars ($21,000) for materials or supplies to be furnished, sold, or leased to the district, to the lowest responsible bidder who shall give such security as the board requires, or else reject all bids. This section applies to all materials and supplies whether patented or otherwise."

Inasmuch as the inquiry presented for consideration supposes compliance with the bidding requirements of this section, it will

_____

[1]Our observation in 60 Ops.Cal.Atty.Gen., supra, 207, note 1, is disapproved to the extent of inconsistency.

be assumed for purposes of this opinion that the contracts in question involve an expenditure of more than twenty-one thousand dollars.

The question remains whether a school district may delegate its power to contract for the procurement of materials and supplies to a <u>private</u> entity.  If a school district may not delegate the exercise of its essential powers and functions to a private association when acting on behalf of the school district (cf. Knight v. Eureka, supra, 123 Cal. 192) apart from the Act, it could not do so under the Act.  (23 Ops.Cal.Atty.Gen., supra, 148.)[2]

The quest for authority to delegate to a private entity the school district's power to contract for the procurement of supplies appropriately begins with article IX, section 14, of the California Constitution:

> "The Legislature shall have power, by general law, to provide for the incorporation and organization of school districts, high school districts, and community college districts, of every kind and class, and may classify such districts.

> "The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."

---

[2]In 1957, Government Code section 6506 was amended to add the words italicized:

> "The agency or entity provided by the agreement to administer or execute the agreement may be one or more of the parties to the agreement or a commission or board constituted pursuant to the agreement or a person, firm or corporation, including a nonprofit corporation, designated in the agreement.  One or more of the parties may agree to provide all or a portion of the services to the other parties in the manner provided in the agreement.  The parties may provide for the mutual exchange of services without payment of any consideration other than such services."

Read in the context of the Act as a whole, it is apparent that the amendment does not constitute independent authority to delegate power to a private entity where no such authority exists with respect to each member district.

Prior to the addition of the second sentence at the general election on November 7, 1972, operative July 1, 1973, the courts had taken a narrow view of the powers of a school district, namely, that a school district had only those powers that were conferred by a specific statutory grant. (Grasko v. Los Angeles City Bd. of Educ. (1973) 31 Cal.App.3d 290, 301; Elder v. Anderson (1962) 205 Cal.App.2d 326, 333; 65 Ops.Cal.Atty.Gen. 326, 327 (1982); 63 Ops.Cal.Atty.Gen. 851, 852 (1980).)

Pursuant to the constitutional grant of authority, the Legislature enacted section 35160 of the Education Code:

"On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

This section effectively rendered the strict rule inapplicable (63 Ops.Cal.Atty.Gen., supra, 852; 60 Ops.Cal.Atty.Gen. 177, 180 (1977)) and "profoundly alters the analytic focus of a determination of a school district's authority in any given case. In essence, we now must look to whether particular conduct is precluded, where previously we searched for express or implied authorization for such conduct." (60 Ops.Cal.Atty.Gen., supra, 327-328.)

However, we have previously determined, based upon an examination of the Detailed Analysis by the Legislature Counsel in the voters' pamphlet (Proposition 5) at the general election on November 7, 1972, that the broad powers contemplated by the constitutional amendment are limited to those which are "related to school purposes" (64 Ops.Cal.Atty.Gen. 146, 147-148; and cf. 60 Ops.Cal.Atty.Gen. supra, 208), i.e., which are directed toward educational needs (60 Ops.Cal.Atty.Gen., supra, 180-181). It has been determined in this regard that the "permissive" standard does not allow any latitude in terms of compliance with the bidding procedures set forth in Public Contract Code section 20111, supra. (Associated General Contractors v. San Francisco Unif. Sch. Dist. (9 CA 1980) 616 F.2d 1381, 1384-1385.)

The question remains whether the delegation to a private entity of the school district's power to contract for the procurement of supplies is authorized by law. It is apparent that the responsibility in question involves in numerous respects, such as the determination of the lowest responsible bid, the exercise of discretion. As a general rule, powers conferred upon public agencies and officers which involve the exercise of judgment and discretion are in the nature of public trusts and cannot be surrendered or delegated to subordinates <u>in the absence of</u>

statutory authorization.  (California Sch. Employees Assn. v. Personnel Com. (1970) 3 Cal.3d 139, 144.)  In that case, it was held that a school district's personnel commission lacked the authority to dismiss an employee without prior approval of the school's governing board.  In  Webster v. Board of Education, supra, 140 Cal. 331, it was held that the superintendent of schools, and ex officio member of the board of education, could not delegate the performance of his duties on such board to a deputy. In Schecter v. County of Los Angeles (1968) 258 Cal.App.2d 391, it was held that a county civil service commission could not delegate the duty of final classification of positions to the secretary and chief examiner of the commission.  In Moss v. Board of Zoning Adjustment (1968) 262 Cal.App.2d 1, it was held that the board could not delegate to its secretary its authority to make findings.

        In similar vein, this office has determined that the law enforcement agency having primary traffic investigative authority on the highway where a hazardous materials incident occurs may not delegate scene management responsibility to another agency (65 Ops.Cal.Atty.Gen. 32 (1982); that the State Controller cannot authorize a deputy to vote or otherwise act for him as a member of the State Board of Equalization (56 Ops.Cal.Atty.Gen. 399 (1973)); and that a member of the county board of supervisors cannot appoint another in his place for the purpose of exercising the sovereign powers of government (54 Ops.Cal.Atty.Gen. 154 (1971)).

        While each of the foregoing cases and opinions involved an attempted delegation to another public agency or to a subordinate public officer, we perceive no basis for a different result had the attempted delegation been to a private entity.  In an early case, Morton Bros. v. Pacific Coast S.S. Co. (1898) 122 Cal. 352, such an attempt was made with predictable results.  The court held improper certain action of a steamship company to which the harbor commissioners had delegated the power "to set apart and assign suitable wharves . . . for the exclusive use of its vessels," and granting exclusive privileges on piers occupied by its vessels.  The court stated (id. at 356):

        "These commissioners had power to grant to the steamship company only rights and interests which the statute declares they may grant.  For the power and control over the waterfront delegated by the statute to the commissioners may be exercised by them alone, and they can delegate none of those powers, and no part of that control, to third parties.  (122 Cal. at p. 354.)

        "The measure of the power of the harbor commissions is found in [the] language . . . [of the statute (former Pol. Code, § 2524), and construing the power 'to set apart and assign suitable wharves . . . for the exclusive use of vessels' as not to include the power to give the

6.                                        88-305

entire control and occupancy of those wharves to an assignee], the assignment to the steamship company only gave that company the exclusive privilege of using these piers in the loading and unloading of freight and passengers. In all other things these piers are under the control and authority of the harbor commissioners, and subject to all reasonable rules and regulations they may promulgate.

". . . [The] matter of granting or refusing privileges of the kind here involved is a matter with the harbor commissioners alone, and a matter which they should control and manage by reasonable rules and regulations."

We have previously observed that the rationale for not permitting such secondary delegation has been based on various theories, to wit, that their conference is in the nature of a public trust; that their delegation would be anomalous; that the original delegation is purely personal; and that there is a presumption that the officer in which the powers are reposed was selected because of his fitness and competence to exercise them. (65 Ops.Cal.Atty.Gen., supra, 402.)

As previously noted, these cases prohibited delegation in the absence of statutory authorization. (California Sch. Employees Assn. v. Personnel Com., supra, 3 Cal.3d at 144.) Even where the delegated activity does not involve the same degree of discretion or judgment inherent in the above cases, but is ministerial, a delegation made to an individual other than a deputy must be authorized by law. In this regard, Government Code section 7 provides:

"Whenever a power is granted to, or a duty is imposed upon, a public officer, the power may be exercised or the duty may be performed by a deputy of the officer or by a person authorized, pursuant to law, by the officer, unless this code expressly provides otherwise." (Emphasis added.)

Whether the delegation to a private entity of the function in question is authorized by law for purposes of the doctrine against delegation and Government Code section 7 requires an examination of other provisions. Specifically, Government Code section 53060 provides as follows:

"The legislative body of any public or municipal corporation or district may contract with and employ any persons for the furnishing to the corporation or district special services and advice in financial, economic, accounting, engineering, legal, or administrative matters

if such persons are specially trained and experienced and competent to perform the special services required.

"The authority herein given to contract shall include the right of the legislative body of the corporation or district to contract for the issuance and preparation of payroll checks.

"The legislative body of the corporation or district may pay from any available funds such compensation to such persons as it deems proper for the services rendered."  (Emphasis added.)

This section authorizes a school district to contract with a private person or entity for "special services."  The criteria for determining the nature of special services were set forth in Darley v. Ward (1982) 136 Cal.App.3d 614, 627-628:

"Whether services are special requires a consideration of factors such as the nature of the services, the qualifications of the person furnishing them and their availability from public sources.  (Jaynes v. Stockton (1961) 193 Cal.App.2d 47, 51-52.)  Services may be special because of the outstanding skill or expertise of the person furnishing them.  (Kennedy v. Ross (1946) 28 Cal.2d 569, 574; Jaynes v. Stockton, supra, 193 Cal.App.2d at p. 52.)  Whether services are special is a question of fact.  (California Sch. Employees Assn. v. Sunnyvale Elementary Sch. Dist. (1973) 36 Cal.App.3d 46, 61; Jaynes v. Stockton, supra, 193 Cal.App.2d at p. 53.)"

Whether the function in question may be classified as a special service is ultimately a question of fact.  While no similar case has been found, it has been held, for example, that hospital management (Darley v. Ward, supra, 136 Cal.App.3d 614), research and development (Calif. Sch. Emp. Assn. v. Sunnyvale Elementary Sch. Dist. (1973) 36 Cal.App.3d 46), and special counsel as prosecutor where the city attorney had not been vested with prosecutorial powers (Montgomery v. Superior Court (1975) 46 Cal.App.3d 657; compare Jaynes v. Stockton (1961) 193 Cal.App.2d 47), are special services.  However, we see nothing "special" in contracting for school supplies. Contracting for supplies is part of the ordinary and necessary business of school districts.  While Government Code section 53060 may authorize a school board to employ outside experts for advice relating to such contracts, we doubt that a court would find that the making of a contract for school supplies in a "special service" under that section.  In any event, we now consider other more specific provisions which must, in our view, be construed as prohibitions against such proposed delegation.

It is apparent that the power to secure listings of supplies at guaranteed minimum prices for a designated period involves the execution of binding agreements between the lowest responsible bidder of each item which is the subject of competitive bidding, and the private entity. (Cf. Pub. Cont. Code, §§ 20111, supra, 5101 and 5106.) Education Code section 39656 pertains specifically to the delegation by a school district of its power to contract:

> "Whenever in this code the power to contract is invested in the governing board of the school district or any member thereof, such power may by a majority vote of the board be delegated to its district superintendent, or to such person as he may designate, or if there be no district superintendent then to such other <u>officer or employee</u> of the district as the board may designate. Such delegation of power may be limited as to time, money or subject matter or may be a blanket authorization in advance of its exercise, all as the governing board may direct; provided, however, that no contract made pursuant to such delegation and authorization shall be valid or constitute an enforceable obligation against the district unless and until the same shall have been <u>approved or ratified</u> by the governing board, said approval or ratification to be evidenced by a motion of said board duly passed and adopted. In the event of malfeasance in office, the school district official invested by the governing board with such power of contract shall be personally liable to the school district employing him for any and all moneys of the district paid out as a result of such malfeasance." (Emphases added.)

Further, section 35161 of said code provides:

> "The governing board of any school district may execute any powers delegated by law to it or to the district of which it is the governing board, and shall discharge any duty imposed by law upon it or upon the district of which it is the governing board, <u>and may delegate to an officer or employee of the district any of those powers or duties. The governing board, however, retains ultimate responsibility over the performance of those powers or duties so delegated</u>." (Emphasis added.)

The immediate concern presented by these statutes is that the authority to delegate the power to contract on behalf of a school district is expressly limited to its own officers and employees.

A certain ambiguity in section 39656 must be recognized. Under that section the power to contract may be delegated by the district board to its superintendent or to such "person" as he may designate, or if there be no superintendent then to such "other

officer or employee of the district" as the board may designate. If the term "person" be construed as a reference to any, including a private, person, then the authority to delegate is absolutely unqualified insofar as the designation by a superintendent of a delegatee is concerned.  Whether the Legislature intended to confer such unlimited authorization is questionable, particularly where, in the absence of a superintendent, the designation by the board of a delegatee is expressly limited to an officer or employee of the district.   If so, the board would in effect be authorized to delegate through its superintendent to a greatly expanded class of persons than that to which it could delegate of its own accord.  In addition, the last sentence of section 39656 pertains to the personal liability for malfeasance as a delegatee of a school district official, with no reference whatever to such conduct by a private person so invested with the power of contract.  Finally, section 35161 governs the delegation by the district board of any of its powers only to "an officer or employee of the district." Thus it appears that these statutes construed together preclude the delegation to a private party of the power to contract on behalf of a school district.

In addition to the express limitation respecting the _recipients_ of delegated power are the mandatory constraints upon the _scope_ of the delegation.  Specifically, section 39656 provides that ".  .  . no contract made pursuant to such delegation and authorization shall be valid or constitute an enforceable obligation against the district unless and until the same shall have been approved or ratified by the governing board, said approval or ratification to be evidenced by a motion of said board duly passed and adopted."  Section 35161 also contains a proviso retaining in the governing board ".  .  . ultimate responsibility over the performance of those powers or duties so delegated."  The proposed procedure, on the other hand, contemplates neither the approval or ratification by the JPA of any such contract entered into by the private entity, nor the retention by the JPA of ultimate responsibility over the performance of delegated powers.

It has been stated in this regard that where a statute prescribes the mode by which a power may be exercised, the mode is the measure of the power.  (Uhl v. Baderacco (1926) 199 Cal. 270, 283; Crowell v. Martin (1872) 42 Cal. 605, 613; Bear River, Etc. Corp. v. County of Placer (1953) 118 Cal.App.2d 684, 689; 64 Ops.Cal.Atty.Gen. 804, 808 (1981).)

> ".  .  . In the grants [of powers] and in the regulation of the mode of exercise, there is an implied negative; an implication that no other than the expressly granted power passes by the grant; that it is to be exercised only in the prescribed mode . . . ."  (Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 196; 70 Ops.Cal.Atty.Gen. 227, 230 (1987).)

(See also Garson v. Juarique (1979) 99 Cal.App.3d 769, 774; Kirby v. Alcoholic Bev. Cont. App. Bd. (1969) 3 Cal.App.3d 209, 221.)

Inasmuch as a school district may not delegate to a private person or entity the ultimate responsibility to contract on its behalf, two or more of them may not establish a JPA to delegate to a private person such authority. Numerous alternative procedures may be available. Under the provisions of Government Code section 53060, supra, for example, authorizing a public agency to enter into a contract for "special services and advice in financial, economic, . . . or administrative matters if such persons are specially trained and experienced and competent to perform the special services required," a school district, and therefore a JPA, may contract with a private party for expert advice relating to the solicitation and evaluation of bids. Further, as discussed above, a school district may delegate the power to contract to an officer or employee of the district subject to the constraints provided in Education Code sections 39656 and 35161, supra. Another alternative is authorized under Government Code section 6506, providing that "[t]he agency or entity provided by the agreement to administer or execute the agreement may be one or more of the parties to the agreement . . ." and that "[o]ne or more of the parties may agree to provide all or a portion of the services to the other parties in the manner provided in the agreement." Under this section, the agreement may designate one member of the JPA to secure, in accordance with competitive bidding requirements, agreements by suppliers to furnish supplies to member districts at guaranteed minimum prices for a designated period. However, under existing statutory provisions, two or more school districts have no authority to establish a JPA to contract with a private entity to secure such agreements.

* * * * *