[Civ. No. 22477.   First Dist., Div. Two.   Jan. 21, 1966.]

JAMES A. FORSTNER et al., Plaintiffs and Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Appellants.

Thomas M. O'Connor, City Attorney, and Bernard J. Ward, Deputy City Attorney, for Defendants and Appellants.

Goldstein, Kopp & Skinner, Kopp & Skinner, Quentin L. Kopp and Vivian Hannawalt for Plaintiffs and Respondents.

SHOEMAKER, P. J.—Plaintiffs, employed as Class 8410 probation officers by the City and County of San Francisco (hereafter referred to as the "city"), brought this proceeding in mandamus to compel the city, its civil service commission, its board of supervisors and the individual members of both bodies, to reclassify plaintiffs' positions so as to entitle them to the higher rate of compensation as established for Class T-56 probation officers, and to pay plaintiffs such amounts as may be found due them from July 1, 1962.

The facts are without dispute. Late in 1959, the civil service commission, acting under section 151 of the city charter, commenced a comprehensive survey of the city's job classifications. As a result of this survey, it was found that

the existing position of Class T-56 probation officer was too broadly defined and actually contained two different levels of duties and responsibilities. The commission accordingly determined that there should be a reclassification by the creation of two new positions: Class 8410 (probation officer, juvenile court) and Class 8412 (senior probation officer, juvenile court). The more responsible duties previously encompassed within the T-56 position were to be allocated to the 8412 position, and the less responsible duties of the T-56 position were to be allocated to the 8410 position. The schedule of compensation recommended for the 8412 position was slightly higher than that for the T-56 position, and the schedule of compensation recommended for the 8410 position was slightly lower than that for the T-56 position. The recommended compensation schedules for the two new positions were based upon data obtained through a survey of the wages paid to employees holding comparable positions with other governmental organizations in California.

The commission's recommendations were accepted by the board of supervisors and the board passed an ordinance in accordance therewith.

Following the creation of the two new positions, the civil service commission undertook to determine what policy it would follow with regard to individuals already employed as T-56 probation officers. Although the T-56 position could have been eliminated altogether by reclassifying all T-56 employees as either 8410 or 8412 employees, the commission concluded that it could not "downgrade" a T-56 employee to an 8410 position without adversely affecting his civil service rights in violation of section 141 of the city charter. It was therefore decided that all T-56 employees possessing the necessary qualifications would be "upgraded" into 8412 positions and that all T-56 employees who were qualified only for 8410 positions would remain T-56 employees covered by the compensation schedule in effect prior to the creation of the 8410 and 8412 positions.

Since the above-mentioned policy was intended to result in the eventual elimination of the T-56 position, the commission made no appointments to said position subsequent to the creation of the 8410 and 8412 positions. T-56 positions were retained solely to protect the status rights of incumbents, and the individuals occupying such positions performed exactly the same duties as employees appointed to 8410 positions but were covered by a higher compensation schedule.

In conducting subsequent salary surveys, the civil service commission continued to adjust the salary for the T-56 position in accord with data of the type used prior to the creation of the 8410 and 8412 positions. Adjustments in the compensation schedule for the T-56 position were thus based upon data pertaining to the wages which other governmental organizations in the state paid to employees holding positions comparable to both the 8410 and 8412 positions.

Plaintiffs were all appointed to 8410 positions subsequent to July 1, 1962. On February 1, 1962, the civil service commission, after conducting a comprehensive salary and wage survey, had recommended to the board of supervisors that the compensation schedules for the fiscal year 1962-1963 be set at $543 to $660 per month for the 8410 position, and $556 to $676 per month for the T-56 position. Effective July 1, 1962, the board adopted the commission's recommendation as to the 8410 position but set the compensation schedule for the T-56 position at $570 to $693 per month.

On January 31, 1963, the commission, having conducted a further salary and wage survey, recommended to the board that the compensation schedules for the fiscal year 1963-1964 be set at $570 to $693 per month for the 8410 position, and $584 to $710 for the T-56 position. Effective July 1, 1963, the board adopted the commission's recommendation as to the 8410 position, but set the compensation schedule for the T-56 position at $599 to $728 per month.

The trial court found that the civil service commission and the board of supervisors, by recommending and establishing a lower schedule of compensation, during the period from July 1, 1962, to June 30, 1964, for 8410 employees than for T-56 employees, had failed to provide like compensation for like service and had thereby abused their discretion under sections 141 and 151 of the city charter, and had acted arbitrarily, capriciously and discriminatorily, and granted the relief sought.

Defendants raise two contentions: (1) that the court erred in finding that the civil service commission and the board of supervisors had abused their discretion and violated the city . charter by recommending and establishing different compensation schedules for T-56 and 8410 employees, and (2) that the court was without authority to substitute its judgment for that of the board of supervisors and to direct it to

perform a legislative act (the fixing of salaries) in a particular manner.

We turn first to a consideration of the charter sections involved.

Section 141 provides in pertinent part that "The [civil service] commission shall classify, and from time to time may reclassify, in accordance with duties and responsibilities of the employment, and training and experience required, all places of employment in the departments and offices of the city and county. . . .

"The commission shall also, in accordance with duties and responsibilities, allocate, and from time to time may reallocate, the positions to the various classes of the classification. *The allocation or re-allocation of a position shall not adversely affect the civil service rights of an occupant regularly holding such position.*" (Italics supplied.)

Section 151 provides in relevant part that "The board of supervisors shall have power and it shall be its duty to fix by ordinance from time to time, as in this section provided, all salaries, wages and compensations of every kind and nature . . . for the positions, or places of employment, of all officers and employees of all departments, offices, boards and commissions of the city and county in all cases where such compensations are paid by the city and county. . . .

"In fixing schedules of compensation as in this section provided, the civil service commission shall prepare and submit to the board of supervisors and the board shall adopt a schedule of compensations which shall include all classifications, positions and places of employment the wages or salaries for which are subject to the provisions of this section; provided, that the civil service commission shall from time to time prepare and submit to the board of supervisors and the board shall adopt amendments to the schedule of compensations which are necessary to cover any new classifications added by the civil service commission. *Under the schedules of compensation recommended by the civil service commission and adopted by the board of supervisors as herein provided, like compensation shall be paid for like service, based upon the classification as provided in section 141 of the charter* . . . The compensations fixed as herein provided shall be in accord with the generally prevailing rates of wages for like service and working conditions in private employment or in other comparable governmental organizations in this state . . .

"The proposed schedules of compensation or any amendments thereto shall be recommended by the civil service commission solely on the basis of facts and data obtained in a comprehensive investigation and survey concerning wages paid in private employment for like service and working conditions or in other governmental organizations in this state.

"The board of supervisors may approve, amend or reject the schedule of compensations proposed by the civil service commission; provided, that before making any amendment thereto the data considered by the board of supervisors as warranting such amendment shall be transmitted to the civil service commission for review and analysis and the commission shall make a report thereon to the board of supervisors, together with a report as to what other changes, and the cost thereof such proposed amendment would require to maintain an equitable relationship with other rates in such schedule.

"Where any compensation paid on January 1st, 1931, is higher than the standard compensation fixed as provided in this section for such position or employment, said compensation shall be continued to the incumbent of such position as long as he legally holds said position, and department heads, in cooperation with the civil service commission where said commission has jurisdiction, shall continuously offer all possible opportunities to said incumbents to assume duties and responsibilities in higher classifications consistent with the higher rates of compensation hereby continued. . . .

"Not later than January 15th, 1944, and every five years thereafter and more often if in the judgment of the civil service commission or the board of supervisors economic conditions have changed to the extent that revision of existing schedules may be warranted in order to reflect current prevailing conditions, the civil service commission shall prepare and submit to the board of supervisors a schedule of compensations as in this section provided. A schedule of compensations or amendments thereto as provided herein which is adopted by the board of supervisors on or before April 1st of any year shall become effective at the beginning of the next succeeding fiscal year. . . ." (Italics supplied.)

Defendants point out that these sections of the city charter require that the civil service commission, when exercising its authority to reclassify positions in accordance with their duties and responsibilities and to reallocate positions to

different classes, must recommend that any newly created job classification be compensated in accord with prevailing rates for like service and working conditions in other comparable governmental organizations in this state, but must avoid reallocating any position in such a manner as to adversely affect the civil service rights of an occupant regularly holding such position.

Next they urge that the evidence in this case shows that the commission carried out its duties and responsibilities as thus required and that there is no evidence that the civil service commission did not act in good faith and in strict compliance with said sections when it reclassified the T-56 position in accordance with its two different levels of duties and responsibilities, reallocated such duties to the newly created 8410 and 8412 positions, and recommended that the compensation schedule for the 8410 position be set at a lower level than that set for the old T-56 position.

Further, they say, the commission was prohibited, under section 141, from accomplishing any reallocation which would adversely affect the civil service rights of occupants regularly holding T-56 positions, and that it had no alternative but to allow those T-56 employees who were not qualified for 8412 positions to retain their old T-56 status and salary; and finally, defendants argue that retention of T-56 positions for this limited purpose is not violative of the requirement of like compensation for like service, for section 151 requires like compensation for like service ''based upon the classification as provided in section 141 of the charter,'' and that the plain meaning of this language is that like compensation shall be paid for like service except where the civil service rights of incumbents will be adversely affected thereby.

Plaintiffs, on the other hand, deny that an incumbent's civil service rights include the right to retain the same schedule of compensation following reclassification of his position. Plaintiffs assert that the civil service rights referred to in section 141 are ''those respecting status, promotional examinations, leave, place of employment, vacation and layoffs or reduction in force, not rates of pay.''

We are satisfied by our study of the applicable provisions of the city charter (§§ 141 and 151) that the construction urged by defendants is correct, and that incumbents were not intended to suffer a decrease in compensation upon reclassification and reallocation of their positions. Although

the charter contains no comprehensive list of an employee's civil service rights, section 151 does provide that those incumbents employed by the city prior to the original implementation of the civil service system should not suffer a reduction in compensation by virtue of the fact that the salaries for their positions were standardized at less than what they were presently earning and that such employees should continue to be paid the old higher rates of compensation as long as they held their positions, and should also continue to be offered all possible opportunities to assume duties and responsibilities in higher classifications consistent with such higher rates of compensation. Under these charter provisions, employees whose positions are subsequently reclassified are protected in their rate of compensation and enjoy as one of their civil service rights referred to in section 141 the right to retain a former higher level of compensation.

■ Defendants contend that the requirement of like compensation for like service and the proviso for the protection of the rights of incumbents are not in conflict and that the framers of the charter intended the former provision to be qualified by the latter. We believe this contention is sound, for such a construction is in accord with settled rules of statutory interpretation and gives effect and meaning to all parts of the charter with the purpose of harmonizing them and effectuating the legislative intention as therein expressed.[1] (*Hanley* v. *Murphy* (1953) 40 Cal.2d 572, 576 [255 P.2d 1] ; *Ohlhausen* v. *Mills* (1929) 101 Cal.App. 754, 761 [282 P. 394].) We hold that the city charter requires that like compensation be paid for like service except where compliance with such requirement would adversely affect the salary and other civil service rights of incumbents regularly employed by the city.

The judgment appealed from was based upon the court's finding that the civil service commission and the board of supervisors, by establishing a lower schedule of compensation for 8410 employees than for T-56 employees, had failed to provide like compensation for like service and had thereby

---

[1]It may be noted that the State Civil Service Act also requires that "like salaries shall be paid for comparable duties and responsibilities" (Gov. Code, § 18850) but provides that "when a position has been allocated to a lower class or the salary range or rate of pay of the class is reduced, the [State Personnel] board may authorize the payment to an employee of a rate above the maximum of the class." (Gov. Code, § 18860.)

abused their discretion under sections 141 and 151 of the city charter, and had acted arbitrarily, capriciously and discriminatorily. We have demonstrated that such is not the case under the circumstances here present. In view of our determination, there is no need to discuss defendants' remaining contention.

The judgment is reversed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied February 18, 1966, and respondents' petition for a hearing by the Supreme Court was denied March 16, 1966.